UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRICIA DALTON OHLE, MUSEUM OF SPORTS | * | CIVIL ACTION NO. |
| HISTORY, LLC, DALTON-OHLE INVESTMENT | * | |
| PROPERTY TRUST, JSJD TRUST and | * | |
| DV ACQUISITIONS, LLC | * | MAG.  SEC. " " |
| *Plaintiffs* | * | |
| | * | |
| VERSUS | * | |
| | * | |
| BANK ONE CORPORATION, BANC ONE | * | |
| INVESTMENT ADVISORS CORPORATION, | * | |
| ADVISORS CORPORATION, JPMORGAN CHASE | * | |
| & CO., RICHARD A. ROGOFF, JOHN KRAMER | * | |
| MAYER BROWN, AND THOM AS E. DURKIN, | * | |
| *Defendants* | * | |

*****************************************************************************

## COMPLAINT

Plaintiffs Patricia Dalton Ohle ("Dalton"), individually, and as sole managing member of

Museum of Sports History, LLC ("MOSH"), John Keane Dalton Jr. ("Dalton Jr."), as trustee of

the Dalton-Ohle Investment Property Trust (the "Dalton Trust") and as trustee of JSJD Trust, and

John Keane Dalton, III ("Dalton III") as manager of DV Acquisitions LLC (the "DV LLC")

(collectively, "Plaintiffs"), file this complaint against Bank One Corporation, Banc One

Investment Advisors Corporation, JPMorgan Chase & Co. (collectively, "Chase"), Richard A.

Rogoff ("Rogoff"), John Kramer ("Kramer"), Mayer Brown LLP ("Mayer Brown") and Thomas

E. Durkin ("Durkin") (collectively, "Defendants") for the reasons more fully stated hereinafter as

follows:

Nature of the Lawsuit

1.      Plaintiffs bring this civil complaint arising from Defendants' violation of the

Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. 1961-1968 et seq. ("RICO"),

fraud, civil conspiracy, conversion, or in the alternative, unjust enrichment and violations of the

Louisiana Unfair Trade Practices Act and The Illinois Consumer Fraud and Deceptive Business Practices Act.

Factual and Jurisdictional Background

  2.  Plaintiff Dalton is an individual residing in Cook County, Illinois.

  3.  Plaintiff MOSH a Delaware limited liability company, with its principal offices in Cook County, Illinois. Dalton is the sole member-manager of MOSH.

  4. Plaintiff Dalton Trust is a trust created under the laws of the State of Louisiana with its trustee residing in St. Tammany Parish, Louisiana.

  5. Plaintiff JSJD Trust is a trust created under the laws of the State of Illinois with its trustee residing in St. Tammany Parish, Louisiana.

  6. Plaintiff DV LLC is a Delaware limited liability company, with its principal offices in St. Tammany Parish, Louisiana.

  7. Defendant Bank One Corporation merged into and was succeeded by JPMorgan Chase & Co. effective on or about September 29, 2004.

  8. Defendant Banc One Investment Advisors Corporation ("BOIA") merged into and was succeeded by JPMorgan Chase & Co. effective on or about July 1, 2004 (collectively Bank One Corporation and Banc One Investment Advisors Corporation are referred to as "Bank One").

  9. Defendant JPMorgan Chase & Co. is a Delaware corporation with its principal office located at 270 Park Avenue, New York, New York. This Defendant is continuously and systematically engaged in business in the State of Louisiana, as further described herein, and thus may be found in the State of Louisiana, and has agents doing business in the State of Louisiana. This Defendant may be served with process through its registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

10. Upon information and belief, Defendant Richard A. Rogoff, who was an employee, agent and/or representative of Bank One and continues to be an employee, agent and/or representative of Chase, is an individual residing in Cook County, Illinois.

11. Upon information and belief, Defendant John Kramer, who was an employee, agent and/or representative of Bank One and continues to be an employee, agent and/or representative of Chase, is an individual residing in Cook County, Illinois.

12. Upon information and belief, Mayer Brown is a limited liability partnership with its principal place of business in Cook County, Illinois.

13. Upon information and belief, Thomas E. Durkin, who is a partner at Mayer Brown, is an individual residing in Cook County, Illinois.

14. This Court possess personal jurisdiction over the Defendants because the Defendants conducted or have conducted business in Louisiana and because the matters alleged herein against the Defendants arose from conduct engaged in and damage occurring in Louisiana.

15. This Court possesses subject matter jurisdiction over this matter pursuant to RICO.

16. Venue is proper in this Court because the disputes described herein arose in part in the Parishes of Orleans and St. Tammany and Plaintiffs are located in St. Tammany Parish.

17. Plaintiffs bring this suit because they were damaged by a scheme of Chase, acting through officers of its legal department, Rogoff and Kramer, its outside counsel, Mayer Brown, and Durkin, the partner at Mayer Brown responsible for Chase's representation, to fraudulently claim monetary restitution, in connection with a criminal prosecution and forfeiture action, United States v. John B. Ohle, III and William E. Bradley, S3 08 CR 1109 (JSR) (the "Ohle Prosecution").

18.  Defendants' scheme included, inter alia, the use of the U.S. mail and electronic communications to claim such monetary restitution, to which, by its own written agreements and Illinois law, Chase had no right, and concerning which Chase, Bank One, Rogoff, Kramer, Mayer Brown and Durkin knew the bank had no right at the time the claim for restitution was made.

19.  At all material times hereto, the Defendants regularly conducted business with citizens of the State of Louisiana, caused tortuous injury within the State of Louisiana by its acts and omissions, regularly solicited business within the State of Louisiana, and derived substantial revenue from services, business contacts and/or contracts with citizens of the State of Louisiana.

20.  Plaintiffs were damaged by Defendants' scheme in that Defendants' fraudulent actions led to Plaintiffs suffering severe financial, business and personal losses.  Moreover, as a result of the Defendants' conduct, Plaintiffs have suffered extensive monetary damages stemming from the restraint, forfeiture and/or loss of certain of Plaintiffs' assets, including, but not limited to, a condominium located at 837 Royal Street, New Orleans, Louisiana, the related lost rental income from that condominium arising from the restraint of the property, $498,311.00 of equity in a personal residence located at 1940 Chestnut Avenue, Wilmette, Illinois, where Dalton and her children currently reside, plus an additional 32.77% of the equity in that residence, and sports memorabilia and other valuable assets, as well as other consequential losses such as valuation losses, lost profits, expenses including storage and legal fees, and other losses related to the restraint and/or forfeiture of these assets.  Additionally, Dalton, her three children, Dalton Jr. and Dalton III have suffered damages in the form of reputational damages, embarrassment and humiliation, severe mental and emotional distress and any other damages recoverable under federal or state law including, but not limited to, attorneys' fees and punitive and/or exemplary damages where applicable due to Defendants" actions.

Jurisdiction and Venue

21.  This Court has jurisdiction over this civil action pursuant to 18 U.S.C.  1964 (a) and 1964(c), and 28 U.S.C.  1331 and 1337.  This is a civil action arising under 18 U.S.C. 1961-1968,  901(a) of Title IX of the Organized Crime Control Act of 1970, as amended, otherwise known as the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and in particular, under 18 U.S.C.  1964 and other causes of action as set forth hereafter.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367.

22.  Venue lies in this District pursuant to 18 U.S.C.  1965 and 28 U.S.C.  1391.  As set forth herein, Defendants at all material times conducted substantial business within this district. The violations occurred at least in part in this District.  Defendants transacted or have transacted its affairs in this District, negotiated and entered contracts in this District, and their concerted conduct, upon which this action is based, was directed at and intended to hurt Plaintiffs in this District.

23.  Defendants, either on their own or through their agents, at the time of the commission of the acts alleged hereunder, were found in and/or transacted business in the State of Louisiana, and the cause of action which is the object of this Complaint arises out of business transactions in the State of Louisiana, including specific acts in this District.

24.  Plaintiffs allege claims under RICO, as well as under state law for common law fraud, civil conspiracy, conversion or, alternatively, unjust enrichment, and violations of Louisiana Unfair Trade Practices Act and the Illinois Fraud and Deceptive Business Practices Act.  Plaintiffs were damaged by Defendants' acts and/or omissions and seek, among other things, compensation for all damages sustained, including without limitation, from the restraint, forfeiture and/or loss of certain of Plaintiffs' assets, including, but not limited to, a condominium

located at 837 Royal Street, New Orleans, Louisiana, the related lost rental income from that

condominium arising from the restraint of the property, $498,311 of equity in a personal

residence located at 1940 Chestnut Avenue, Wilmette, Illinois, where Dalton and her children

currently reside, plus an additional 32.77% of the equity in that residence, and sports

memorabilia and other valuable assets, as well as other consequential losses such as valuation

loss, lost profits, expenses including storage and legal fees, other losses related to the restraint

and/or forfeiture of certain Plaintiffs' assets and any other damages recoverable under federal or

state law including, but not limited to, attorneys' fees and punitive and/or exemplary damages

where applicable.

The Underlying Criminal Action

        25.  In November 2008, John B. Ohle, III ("John Ohle") was indicted by the United States

Government (the "Ohle Prosecution").

        26.  On April 1, 2010, John Ohle was charged along with co-defendant William E.

Bradley in a three-count Superseding Indictment, S3 08 Cr. 1109 (JSR) (the "Superseding

Indictment") that charged Ohle with conspiracy to commit wire fraud against Bank One itself and

to defraud the Internal Revenue Service, in violation of 18 U.S.C. 371 (Count One), and related

tax evasion, in violation of 26 U.S.C. 7201 (Counts Two and Three).

        27.  The Indictment included a forfeiture allegation providing notice that, as a result of

the offenses charged in the Indictment, the defendant shall forfeit to the United States all

property, real and personal, that constitutes or is derived from proceeds traceable to the

commission of the fraud offenses, alleged in Count One, including certain Specific Property, and

pursuant to 21 U.S.C. 853(p), substitute property of the defendant.

28.   Count One of the government's case principally involved allegations of a conspiracy by Ohle and his co-defendant to defraud Bank One of certain fees from a tax related product called "Homer", and related tax conspiracy in regards to the wire fraud charges.

29.   In connection with the Homer transactions, Jenkens & Gilchrist P.C. ("J&G"), a Chicago based law firm, received legal fees from its clients that engaged in the Homer transactions.  Copies of the relevant J&G invoices are attached hereto as Exhibit 1.

30.   Bank One, through its Innovative Strategies Group ("ISG"), acted as financial advisor to J&G related to the Homer transactions, and accordingly entered into services agreements (the "Services Agreement(s)") with J&G related to each individual Homer transaction.  Copies of the relevant Services Agreements are attached hereto as Exhibit 2.

31.   Pursuant to the Services Agreements, Bank One received a specific fee from J&G for each such transaction in exchange for providing financial planning, economic modeling and investment advice to J&G in connection with the implementation of Homer for each of J&G's clients.

32.   In addition to acting as a financial advisor to J&G, Bank One also acted as the trustee of the grantor retained trust that was a part of each Homer transaction.

33.   At John Ohle's trial, the government alleged that Mr. Ohle sought to defraud Bank One by conspiring with others in connection with specific Homer transactions to seek fees in which Bank One purportedly had a property interest; i.e., which would otherwise have gone to Bank One as part of its fee from J&G for that particular transaction.

34.   In his instructions to the jury, United States District Court Judge Jed S. Rakoff made clear to the jury that to convict Ohle "the government must . . . prove that the conspiracy if carried out would foreseeably have resulted in the fraudulent obtaining of moneys, directly or

indirectly, from Bank One."

35.  However, paragraph 3 of each of Bank One's Services Agreements plainly state that "BOIA's fee for services for J & G will be an amount not greater than [$xxx,xxx] which shall be invoiced after the Client has implemented the Strategies and shall be payable upon J&G's receipt of an invoice."

36.  The Services Agreements also plainly state that "BOIA's fee for services is independent of fees that may be charged by J&G or other parties including BOIA and its affiliates for services undertaken as a part of the Strategies."

37.  The original draft of the Services Agreement was provided by Bank One, and John Kramer participated in the drafting and negotiation of the Services Agreements.

38.  As to each of the Services Agreement, Bank One invoiced J&G, in accordance with the Services Agreement, the maximum amount provided under the Services Agreement.  Copies of the relevant Bank One invoices are attached hereto as Exhibit 3.

39.  As to each of the Services Agreements and related Bank One Invoices, J&G wired Bank One the specified fee in full.  Copies of documents produced by Bank One summarizing payment wires received from J&G are attached hereto as Exhibit 4.

40.  The amounts paid on the invoices relied on by the government in the Ohle Prosecution related to fees paid by J&G out of J&G legal fees.

41.  As to each of the Homer transactions, Bank One was paid in full, and pursuant to the terms of the Services Agreements, was not entitled to any additional fees upon which the government based Mr. Ohle's alleged fraud.

42.  As early as March 2008, Rogoff, Kramer and Durkin were directly involved with the United States Government's investigation and prosecution of Ohle, and prepared Bank One witnesses for interviews with prosecutors, agents of the IRS, and to testify at Ohle's trial.

43.  As a result of their involvement in the investigation and prosecution of Ohle, Rogoff, Kramer and Durkin had knowledge of the J&G Invoices to the Homer clients (Exhibit 1 hereto), the Bank One Services Agreements with J&G (Exhibit 2 hereto) and Bank One Invoices to J&G (Exhibit 3 hereto).

44.  Rogoff, Kramer and Durkin also knew that Bank One had been paid in full for each of the Services Agreements, as shown by the summary documents, from Bank One files, attached hereto as Exhibit 4.

45.  Nonetheless, in connection with John Ohle's sentencing, Chase on behalf of Bank One, through the officers of its legal department, Rogoff and Kramer, authorized Durkin of Mayer Brown to submit to the Court, on or about January 10, 2011, a victim impact statement, which is attached hereto as Exhibit 5.

46.  In that statement Bank One and Chase asserted, in pertinent part, as follows: Bank One received fees for sales of HOMER transactions.  However, when a third party referred a client who entered into a HOMER transaction, the third party received a referral fee that served to reduce Bank One's fee.  As the evidence introduced at trial demonstrated, Mr. Ohle participated in a conspiracy to submit fraudulent requests for HOMER related referral fees on behalf of individuals who were not entitled to those fees.  Mr. Ohle's participation in this scheme, which violated the Bank's Code of Conduct, defrauded Bank One of substantial referral fees.

47.  The assertion in this victim impact statement, that third party fees "served to reduce Bank One's fee" is false, and Bank One, Chase, Rogoff, Kramer, Mayer Brown and Durkin knew or should have known the statement was false when made.

48.  The nine transactions (the "Fee Transactions") totaling the $1,256,500.00 for which Bank One fraudulently sought restitution related to the third party fees paid out by J&G, are set forth below as follows (J&G client name, amount of invoice, and Government Exhibit No. at the Ohle Trial) (copies of which are attached hereto as Exhibit 6):

- Ken Brody - $230,000 (2-34)

- Donald Wilson - $690,000 (2-35)

- Jeff Elowe - $50,000 (2-32)

- Graham Hoggins - $31,500 (2-33)

- Scott Gutterman - $85,000 (2-36)

- David Ducote - $64,125 (2-37)

- Suzette Ducote - $15,750 (2-38)

- Wayne Ducote - $32,625 (2-39)

- John Koerner - $57,500 (2-40)

49.  Bank One/Chase, through Rogoff, Kramer and/or Mayer Brown and Durkin, submitted the false impact statement to Judge Rakoff in the Ohle Prosecution, seeking restitution for the above nine Fee Transactions, as well as additional filings related thereto, via the U.S. mails and/or electronically.

50. At the time of the submission of the false victim statement, Rogoff, Kramer and Durkin knew or should have known that Bank One/Chase was not entitled to fees related to any of the above nine Fee Transactions.

51. Through the submission to the U.S. Government of this victim impact statement, and other related filings and/or representations to the U.S. Government, Bank One/Chase sought additional fees for Bank One/Chase, beyond the permitted fees set forth in the Service Agreements, for the above nine Homer Fee Transactions, based on a fraudulent claim that Bank One would have received those fees but for Mr. Ohle's alleged conduct.

52. As a result of Defendants' fraud, the Court awarded Bank One restitution, as set forth in Ohle's Presentencing Investigation Report, in the amount of $1,256,500.00 to be sent to the attention of Rick A. Rogoff, Esq., JPMorgan Chase & Co., Legal & Compliance Department, 105 Dearborn Street, Chicago, IL 60603 and a total forfeiture related to Defendants' fraud of $2,954,334.

53. On May 8, 2012, the Court in the Ohle Prosecution, in reliance on Bank One/Chase's fraudulent statements, entered the Final Order of Forfeiture, including, but not limited to, Item (a) on Schedule A, "An 82.77% interest in . . . 1940 Chestnut Avenue, Wilmette, Illinois 60091 and Item (b) on Schedule A, 837 Royal Street, Unit K, New Orleans, Louisiana 70116" and numerous other sports memorabilia and valuable assets on Schedule A.

54. The forfeiture order resulted in the loss of a majority of Dalton's interest in the Wilmette residence, the Dalton Trust's interest in the New Orleans residence, causing the loss, not only of the New Orleans' residence but of the rental income flowing therefrom, MOSH's interest in many assets, JSJD Trust's interest in many assets and DV LLC's interest in many assets as well as legal fees associated with these actions.

55. Solely for purposes of mitigation of damages, on June 7, 2011, Dalton, MOSH, Dalton Trust, JSJD Trust and DV LLC entered into a Stipulation and Order with the U.S. Attorney's office (the Stipulation), which was entered by the Court in the Ohle Prosecution and limited any further forfeiture of their assets.

56. Pursuant to the Stipulation, the Wilmette residence, where Dalton and her children reside, is currently scheduled to be turned over to the United States government for forfeiture sale no later than July 2012.

57. But for the Defendants' fraudulent scheme, the Stipulation would have been unnecessary, and the above-described properties and assets would not have been forfeited, nor the other damages incurred.

FIRST CAUSE OF ACTION:

Violations of RICO

58. The allegation contained in paragraphs 1 through 57 of this Complaint are incorporated herein by reference.

59. Each Plaintiff is a person within the meaning of 18 U.S.C. 1964(c).

The Enterprise

60. At all times relevant hereto Plaintiffs and each member of the Enterprise was a person within the meaning of 18 U.S.C. 1961(3).

61. An enterprise need not be a specific legal entity but rather may be "any union or group of individuals associated in fact although not a legal entity."

62. The enterprise at issue at this case, for purposes of 18 U.S.C. 1961(3), 1962(c) and 1962(d), is an association-in-fact of all Defendants and unnamed co-conspirators - "Members of the Enterprise" - collectively referred to herein as "the Enterprise."  The wrongdoers that were

part of the association-in-fact Enterprise include the Defendants and unnamed co-conspirators.

63. While the Defendants participated in the Enterprise and were a part of it, the Defendants also had an existence separate and distinct from the Enterprise.

64. Defendants maintained an interest in and control of the Enterprise and also conducted or participated in the conduct of the Enterprise's affairs through a patter of racketeering activity.

65. Defendants' control and participation in the Enterprise were necessary for the successful operation of the Defendant's scheme.

66. The Enterprise had an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engaged.

67. Defendants and all other members of the Enterprise shared costs, information, resources, and the fruits of its predicate acts. The association-in fact Enterprise, composed of the Defendants and other Members of the Enterprise, was a formal, ongoing relationship which functioned as a continuing unit, pursuing a course of conduct as set forth above (i.e., to fraudulently obtain fees from tax shelter transactions including fraudulently claiming monetary restitution in connection with the Ohle Prosecution) with a common or shared purpose (i.e., to financially and otherwise benefit Chase, its legal officers, Rogoff and Kramer, and its agent, Mayer Brown, through Durkin), and continuity of structure and personnel (including executives, agents, partners, associates and support staff).

68. Defendants and those employed by and/or associated with the Enterprise, which engaged in interstate commerce, have conducted the affairs of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. 1962(c) to fraudulently claim monetary restitution in connection with the Ohle Prosecution.

69.  Defendants also violated 18 U.S.C.  1962(d), in as much as it knowingly, intentionally, and unlawfully, aided and abetted the Enterprise and conspired to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprise, through the pattern of racketeering activity described herein.

The Scheme

70.  As set forth hereinabove, for a substantial period of time, Members of the Enterprise knowingly, intentionally and directly participated in, or aided and abetted, counseled, commanded, induced, procured or caused and conspired in the pursuit of fraudulently marketing various tax shelter products to obtain fees and fraudulently claiming monetary restitution in connection with the Ohle Prosecution.

71.  The particulars of the scheme as set forth above were achieved by means of false or fraudulent representations or promises and through the use of the mails and/or wires.

Predicate Acts

72.  With respect to the activities alleged herein, the Enterprise acted at all times with malice toward the Plaintiffs, with the intent to engage in the conduct complained of related to the Fee Transactions for the monetary benefit of Defendants and other Members of the Enterprise. Such conduct was done with actionable wantonness and reckless disregard for the rights of Plaintiffs.  The predicate acts were acts of deception, which furthered the goal of fraudulently claiming monetary restitution for the Fee Transactions in connection with the Ohle Prosecution.

73.  With respect to the activities alleged herein, the Enterprise sought to aid and abet and actually did aid and abet a transaction to violate 18 U.S.C.  1962(c).  Each Member of the Enterprise, including the Defendants, agreed to interfere with, obstruct, delay or affect interstate commerce by fraudulently claiming monetary restitution for the Fee Transaction in connection

with the Ohle Prosecution.

74.  With respect to the overt acts and activities alleged herein, each Member of the Enterprise conspired with each other co-conspirator entity or to violate 18 U.S.C. 1962(c), all in violation of 18 U.S.C. 1962(d).

75.  In violation of 1962(c), each Member of the Enterprise agreed and conspired with each other Member to acquire or maintain property interests to which the Enterprise was not entitled through racketeering activity which included fraudulently claiming monetary restitution for the Fee Transaction in connection with the Ohle Prosecution.

76.  The Enterprise's schemes have resulted in severe financial, business and personal losses to the Plaintiffs.

77.  Moreover, as a result of the Defendants' wire fraud and mail fraud violations, Plaintiffs have suffered extensive monetary damages stemming from the restraint, forfeiture and/or loss of certain of Plaintiffs' assets, including, but not limited to, a condominium located at 837 Royal Street, New Orleans, Louisiana, the related lost rental income from that condominium arising from the restraint of the property, $498,311 of equity in a personal residence located at 1940 Chestnut Avenue, Wilmette, Illinois, where Dalton and her children currently reside, plus an additional 32.77% of the equity in that residence, and sports memorabilia and other valuable assets, as well as other consequential losses such as valuation losses, lost profits, expenses including storage and legal fees, and other losses related to the restraint of these assets. Additionally, Dalton, her children, Dalton Jr. and Dalton III have suffered damages in the form of reputational damages, embarrassment and humiliation, severe mental and emotional distress and any other damages recoverable under federal or state law including, but not limited to, attorneys' fees and punitive and/or exemplary damages where applicable due to Defendant's wire fraud and

mail fraud violations.

78. The Enterprise's documents and communications associated with the schemes at issue related to the marketing of various tax shelter products and the to Fee Transactions contained false and/or misleading representations.

79. These misrepresentations constitute "false or fraudulent pretenses, representations or promises" within the meaning of the mail fraud (18 U.S.C. 1341) and wire fraud (18 U.S.C. 1343) provisions.

80. All of the Members of the Enterprise actively participated in this elaborate scheme to obtain money from Plaintiffs, including the Defendants named herein and others who are not named as Defendants to this matter.

81. The numerous predicate acts of mail and wire fraud described herein related to the Defendants' fraudulent marketing of tax shelter products and the Defendants' fraudulent claim for restitution for the Fee Transactions are part of separate fraudulent transactions by the Enterprise designed to defraud the Plaintiffs of money and property interests under false pretenses.

82. As the victim of these unlawful patterns of illegal behavior, Plaintiffs have continued to suffer losses.

83. In carrying out the overt acts and fraudulent transactions described herein, the Enterprise engaged in conduct in violation of various federal and state laws and regulations, including, but not limited to, 18 U.S.C.  1341, 1343, 1346 and 1961 et seq.

84. 18 U.S.C. 1961(1) provides that "racketeering activity means any act indictable under any of the following provisions of Title 18, United States Code:  1341 (relating to mail fraud),  1343 (relating to wire fraud) and  1346 (relating to a scheme or artifice to defraud).

Violations of 18 U.S.C. Sections 1341 and 1343

85.  For the purpose of executing and/or attempting to execute its transaction to defraud and to obtain money by means of false pretenses, representations or promises, the Enterprise, in violation of 18 U.S.C. 1341, placed in post offices and/or in authorized repositories for mail, matter and things to be sent or delivered by the Postal Service and received matter and things therefrom including, but not limited to, instructions, court filings, correspondence, letters and other items related to the marketing of the various tax shelter products and the Fee Transactions.

86.  For the purpose of executing and/or attempting to execute its transaction to defraud and to obtain money by means of false pretenses, representations or promises, the Enterprise, in violation of 18 U.S.C. 1343, transmitted and received by wire, matter and things therefrom, including, but not limited to, instructions, court filings, correspondence, letters and other items related to the marketing of the various tax shelter products and the Fee Transactions.

87.  The Enterprise's use of the mails and wires includes private and public components.

88.  The Members of the Enterprise utilized the U.S. Mail and wire to communicate among themselves, as well as with their unnamed co-conspirators.  The Defendants and or its representatives lived and/or worked in the State of Illinois and participated in this scheme from there, while many of the clients lived in Louisiana and elsewhere and while the Court in the Ohle Prosecution was located in New York.  In order to carry out and implement its scheme, the Enterprise necessarily had to communicate using the interstate mails and wires.

89.  In those matters and things sent or delivered by the Postal Service, by wire and through other interstate electronic media, the Enterprise falsely and fraudulently misrepresented and fraudulently suppressed material facts from Plaintiffs, the tax shelter clients and/or the Court in the Ohle Prosecution, in violation of 18 U.S.C. 1341 and 1343.

90.  The Enterprise intentionally and knowingly made these misrepresentations and intentionally and knowingly suppressed material facts from Plaintiffs, the tax shelter clients and/or the Court in the Ohle Prosecution for the purpose of deceiving them and thereby obtaining financial gain.

91.  The Enterprise either knew, should have known, or recklessly disregarded that the misrepresentations and omissions described herein were material.

92.  Plaintiffs, the tax shelter clients and/or the Court in the Ohle Prosecution justifiably relied on the misrepresentations and omissions.

93.  Plaintiffs have therefore been injured in its business, property and/or person by the Enterprise's overt acts and racketeering activities.

Pattern of Racketeering Activity

94.  The violations set forth herein constitute "racketeering activities" or "predicate acts" within the meaning of 18 U.S.C. 1961(1).

95.  The Enterprise has engaged in a "pattern of racketeering activity," as defined in 1961 of RICO, by committing and/or conspiring to commit or aiding and abetting a transaction with at least two such acts of racketeering activity, as described specifically herein concerning the marketing of various tax shelter products and the Fee Transactions, within the past ten years. Each act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results on the Plaintiffs herein.

96.  The Enterprise's racketeering activities or predicate acts are related and also amount to a continuous criminal activity.

97.  These predicate acts are related in the sense that they have the same purpose (to carry out the schemes described herein); result (to obtain money); victims (such as the clients and

Plaintiffs herein); method of commission (the scheme described herein); and are otherwise interrelated by distinguishing characteristics and are not isolated events, because they were carried out for the same purposes.

98.  The predicate acts were committed in the same manner, and they constituted the Enterprise's "normal" way of doing business with regard to pursuing these business transactions.

99.  The related predicates amount to a continued criminal activity because they extended over a substantial period of time.

100.  The Enterprise's course of action entails a span of at least three years, during which the Defendants committed numerous, related predicate acts, as set forth specifically herein concerning the fraudulent marketing of the tax shelter products and the Fee Transactions, as part of their continuing scheme.

101.  Also, the predicate acts are closely intertwined as far as actors, goals, nature, functioning and structure of the operations described herein in the persecution of Plaintiffs.

102.  The multiple acts and the continuity and relatedness of racketeering activity committed and/or conspired to or aided and abetted by Defendants and unnamed co-conspirators, as described herein, were related to each other, amount to and pose a threat of continued racketeering activity, and, therefore, constitute a "patter of racketeering activity" within the meaning of 18 U.S.C. 1961(5).

103.  As a result of the Enterprise's conduct set forth herein, Plaintiffs have suffered extensive monetary damages stemming from the restraint, forfeiture and/or loss of certain of Plaintiffs' assets, including, but not limited to, a condominium at 837 Royal Street, New Orleans, Louisiana, the related lost income from that condominium arising from the restraint of the property, $498,311 of equity in a personal residence located in 1940 Chestnut Avenue, Wilmette,

Illinois, where Dalton and her children currently reside, plus an additional 32.77% of the equity

in that residence, and sports memorabilia and other valuable assets, as well as other

consequential losses such as valuation losses, lost profits, expenses including storage and legal

fees, and other losses related to the restraint and/or forfeiture of these assets.

104.  As a proximate cause of the foregoing, Plaintiffs have been injured in an actual

amount to be proven at trial, and should be awarded treble damages in accordance with the

evidence, plus attorneys' fees and costs.

SECOND CAUSE OF ACTION:

FRAUD

105.  The allegations contained in paragraphs 1 through 104 of this Complaint are

incorporated herein by reference.

106.  The Enterprise made false and misleading statements in violation of the law as set

forth herein.

107.  The members of the Enterprise, and or their representatives or agents, including

their attorneys, made and/or were responsible for knowingly false misrepresentations to the tax

shelter clients and the Court in the Ohle Prosecution in order to induce the clients to pay fees and

the Court to order the restitution for the Fee Transactions that was fraudulently sought by Chase.

108.  These knowingly false representations, included, but were not necessarily limited to,

the representation in Chase's Victim Impact Statement that the third party fees, on which Chase's

purported claim to restitution was based, had "served to reduce Bank One's fee" is false.

109.  Chase submitted the false victim impact statement through Rogoff, Kramer and

Durkin, in order to fraudulently seek from the U.S. government restitution for Mr. Ohle's alleged

conduct concerning the Fee Transactions to which it was not entitled under the Services

Agreements and/or Illinois law.

110.  The above intentional omissions of material fact and/or affirmative representations made by the Enterprise and its unnamed co-conspirators were false when made and the Enterprise knew or should have known these representations to be false when made with the intention that the Court and/or Plaintiffs rely on those representations.

111.  In addition, the above affirmative misrepresentations and/or intentional omissions of material fact were made knowingly by the Enterprise with the intent to induce the Court to order restitution for the Fee Transactions to which Chase was not entitled.

112.  In reasonable reliance on the Enterprise's false affirmative representations and intentional omissions of material facts regarding the transactions at issue, the Court ordered restitution to Chase for the Fee Transactions to which it was not entitled in the amount of $1,256,500 and resulted in a forfeiture order of $2,954,334.

113.  As a result of the Enterprise's conduct set forth herein, Plaintiffs have suffered injury in that they have suffered extensive monetary damages stemming from the restraint, forfeiture and/or loss of certain Plaintiffs' assets, including, but not limited to, a condominium located at 837 Royal Street, New Orleans, Louisiana, the related lost rental income from that condominium arising from the restraint of the property, $498,311 of equity in a personal residence located at 1940 Chestnut Avenue, Wilmette, Illinois, where Dalton and her children currently reside, plus an additional 32.77% of the equity of that residence, and sports memorabilia and other valuable assets, as well as other consequential losses such as valuation losses, lost profits, expenses including storage and legal fees, and other losses related to the restraint and/or forfeiture of these assets.  Additionally, Dalton, her children, Dalton Jr. and Dalton III have suffered damages in the form of reputational damages, embarrassment and

humiliation, severe mental and emotional distress and any other damages recoverable under federal or state law including, but not limited to, attorneys' fees and punitive and/or exemplary damages where applicable due to Defendants fraud.

114. As a proximate cause of the foregoing, Plaintiffs have been injured in an actual amount to be proven at trial, and should be awarded damages in accordance with the evidence, plus attorneys' fees and costs.

THIRD CAUSE OF ACTION:

CIVIL CONSPIRACY

115. The allegations contained in paragraphs 1 through 114 of this Complaint are incorporated herein by reference.

116. As described more fully herein, the Enterprise and its Members, including the Defendants, knowingly acted in concert.

117. The Enterprise and its Members, including the Defendants acted as described herein according to a predetermined and commonly understood and accepted plan of action, all for the purposes of fraudulently claiming monetary restitution for the Fee Transactions in connection with the Ohle Prosecution.

118. The acts of the Enterprise were contrary to numerous provisions of law, as stated herein.

119. There was a meeting of the minds between and among the Defendants and the other members of the Enterprise, both known and unknown, to commit the unlawful acts alleged herein.

120. This conspiracy to commit these unlawful, overt acts proximately caused and continues to cause Plaintiffs damages as set forth herein.

121. As a result of the conduct of the Members of the Enterprise including the Defendants, Plaintiffs suffered substantial damages in the form of financial, business and personal losses. Moreover, as a result of the Defendants' violation of LUTPA and Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiffs have suffered extensive monetary damages stemming from the restraint, forfeiture and/or loss of certain of Plaintiffs' assets, including, but not limited to, a condominium located at 837 Royal Street, New Orleans, Louisiana, the related lost rental income from that condominium arising from the restraint of the property, $498,311 of equity in a personal residence located at 1940 Chestnut Avenue, Wilmette, Illinois, where Dalton and her children currently reside, plus an additional 32.77% of the equity in that residence, and sports memorabilia and other valuable assets, as well as other consequential losses such as valuation losses, lost profits, expenses including storage and legal fees, and other losses related to the restraint of these assets. Additionally, Dalton, her three children, Dalton Jr. and Dalton III have suffered damages in the form of reputational damages, embarrassment and humiliation, severe mental and emotional distress and any other damages recoverable under federal or state law including, but not limited to, attorneys' fees and punitive and/or exemplary damages where applicable due to Defendants' conduct.

122. As proximate cause of the foregoing, Plaintiffs have been injured in an actual amount to be proven at trial and should be awarded in accordance with the evidence, plus attorneys' fees and costs.

FOURTH CAUSE OF ACTION:

CONVERSION, OR, IN THE ALTERNATIVE, UNJUST ENRICHMENT

123. The allegations contained in paragraphs 1 through 122 of this Complaint are incorporated herein by reference.

124.  An actual, justiciable controversy exists between Plaintiffs on the one hand and Defendants and other Members of the Enterprise on the other.

125.  Had the Defendants not fraudulently attempt to obtain money from the Fee Transactions, the Plaintiffs would not have suffered losses related to the forfeiture order in the Ohle Prosecution nor would the Plaintiffs have incurred the expenses and and damages associated with such actions.

126.  The awarding of the fraudulent restitution amount to Chase enriched Defendants and was to the detriment of Plaintiffs.

127.  Plaintiffs seek a declaration the Defendants have unlawfully converted the Plaintiffs property, or, in the alternative, that the Defendants have been unjustly enriched and all money and/or property paid to the Defendants must be returned to Plaintiffs.

128.  Plaintiffs also seek a judgment declaring each defendant liable jointly and in solido with all unnamed co-conspirators for all damages sustained.

129.  Finally, Plaintiffs seek an award of costs and reasonable and necessary attorneys' fees as are equitable and just.

FIFTH CAUSE OF ACTION:

VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES ACT

AND THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

130.  The allegations contained in paragraphs 1 through 129 of this Complaint are incorporated herein by reference.

131.  The Defendants engaged in unfair and deceptive acts and practices described above, in violation of La. R.S. 51:1409 of the Louisiana Unfair Trade Practices Act ("LUTPA") and

Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

132.  The Defendants' unfair and deceptive acts and practices occurred in the conduct of trade and commerce, including offering financial and fiduciary services related to the offering of illegal tax shelter products.

133.  The Defendants used or employed deception, fraud, false pretense, false promise, misrepresentation and the concealment, suppression or omission of material facts with intent that the Plaintiffs, tax shelter clients and/or Court rely upon the misrepresentation, concealment, suppression or omission of such material facts.

134.  The Defendants' actions were taken with actual and deliberate intention to harm Plaintiffs, or, if not intentional, with an utter indifference to or the conscious disregard for the injury to Plaintiffs.

135.  The Defendants' unfair and deceptive acts and practices caused Plaintiffs substantial damages in the form of severe financial, business and personal losses.  Moreover, as a result of the Defendants' violation of LUTPA and Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiffs have suffered extensive monetary damages stemming from the restraint, forfeiture and/or loss of certain of Plaintiffs' assets, including, but not limited to, a condominium located at 837 Royal Street, New Orleans, Louisiana, the related lost rental income from that condominium arising from the restraint of the property, $498,311 of equity in a personal residence located at 1940 Chestnut Avenue, Wilmette, Illinois, where Dalton and her children currently reside, plus an additional 32.77% of the equity in that residence, and sports memorabilia and other valuable assets, as well as other consequential losses such as valuation losses, lost profits, expenses including storage and legal fees, and other losses related to the

restraint of these assets. Additionally, Dalton, her three children, Dalton Jr. and Dalton III have suffered damages in the form of reputational damages, embarrassment and humiliation, severe mental and emotional distress and any other damages recoverable under federal or state law including, but not limited to, attorneys' fees and punitive and/or exemplary damages where applicable due to Defendants' deceptive business practices.

136.  Both LUTPA and Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a(c), allow this Court to award attorneys' fees and costs to prevailing Plaintiffs.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectively pray that, after all due proceedings, the Court enters judgment:

a.  As to the RICO claim, a judgment in favor of Plaintiffs and against each Defendant, jointly and severally, and in solido, with all unnamed co-conspirators, for actual damages in an amount to be proven at trial, plus treble damages, attorneys' fees, interest and costs;

b.  declaring that the Defendants are liable to the Plaintiffs for fraud in the misrepresentations and intentional omissions of materials facts made knowingly by the Defendants;

c.  declaring that the Defendants are liable to the Plaintiffs for the civil conspiracy;

d.  declaring that the Defendants engaged in the unlawful conversion, or, in the alternative, were unjustly enriched, and ordering that the Defendants must forfeit and disgorge the money and/or property;

e.  declaring that the Defendants engaged in unfair and deceptive business acts and practices;

f.  awarding Plaintiffs Dalton, her children, Dalton Jr. and Dalton III monetary damages in the form of embarrassment and humiliation, severe mental and emotional distress and any other damages recoverable under federal or state law including, but not limited to, attorneys' fees and punitive and/or exemplary where applicable due to the Defendants' aforementioned conduct; and

g.  granting such other and further relief which the Court deems necessary and proper at law and in equity.

Respectfully submitted,

Dennis Rinck (#32653)
Rivertown Law Center LLC
525 Clay Street
Kenner, Louisiana 70062
Telephone:  (504) 704-1194
Telecopier:  (504) 364-9366
Counsel for Plaintiffs