UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PATRICIA DALTON OHLE, et al.**<br>   *Plaintiffs*<br><br>**VERSUS**<br><br>**BANK ONE CORPORATION, et al.**<br>   *Defendants* | **CIVIL ACTION NO. 2:12-CV-01324**<br><br>**JUDGE CARL J. BARBIER**<br><br>**MAGISTRATE DANIEL E. KNOWLES** |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR ALTERNATIVELY, FOR IMPROPER VENUE

MAY IT PLEASE THE COURT:

Defendants, Mayer Brown LLP ("Mayer Brown") and Thomas M. Durkin ("Mr. Durkin"), respectfully submit this memorandum in support of their Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, for Improper Venue (the "Motion to Dismiss"). Because Plaintiffs' claims do not arise out of Mayer Brown and Mr. Durkin's limited and sporadic contacts with the State of Louisiana, Mayer Brown and Mr. Durkin are not subject to this Court's specific or general *in personam* jurisdiction. Similarly, because there is another forum with personal jurisdiction over all defendants in this case, the ends of justice do not support the exercise of personal jurisdiction over Mayer Brown and Mr. Durkin under the RICO statute, 18 U.S.C. § 1965(b). The Court should, therefore, dismiss all of Plaintiffs' claims against Mayer Brown and Mr. Durkin for lack of personal jurisdiction. Alternatively, the Court should dismiss this case for improper venue.

**I.   INTRODUCTION**

On June 2, 2010, John B. Ohle III ("Mr. Ohle"), the husband of plaintiff, Patricia Dalton Ohle ("Mrs. Ohle"), was convicted of defrauding several victims, including his employer, JP

Morgan Chase & Co. ("Chase"),[1] in the matter entitled *United States v. Ohle,* 1:08-cr-1109, United States District Court for the Southern District of New York[2] (the "Criminal Case" or "CC").  Following Mr. Ohle's conviction, the United States obtained an order of forfeiture as to certain property owned by Mr. Ohle, Mrs. Ohle, and the other plaintiffs in this case.  After unsuccessful challenges to the jury verdict and forfeiture order in the Criminal Case, the Plaintiffs in this case entered into a Stipulation and Order dated June 3, 2011 that permitted the United States to seize and sell their property.  *See* Stipulation and Order, Exhibit ("Exh.") "E" to the Motion to Dismiss.  Now, in this case, Plaintiffs collaterally attack the jury verdict and the Stipulation and Order by claiming that (1) Chase was not a victim of Mr. Ohle's fraud and (2) Chase and its counsel, Mayer Brown and Mr. Durkin, improperly submitted a victim impact statement based on the jury's verdict, supposedly resulting in the "wrongful" seizure of the very same assets the Plaintiffs agreed to forfeit in the Stipulation and Order.  *See* Complaint, Doc. 1, ¶ 17, 20, 46-47, 52-54.  While Mayer Brown and Mr. Durkin vehemently deny any wrongdoing, none of the alleged wrongful actions occurred in or were directed toward Plaintiffs or the State of Louisiana.  Accordingly, Mayer Brown and Mr. Durkin lack sufficient contacts with this forum to support personal jurisdiction or to make this venue proper.

## II.  FACTUAL BACKGROUND

While the merits of Plaintiffs' claims are irrelevant at this juncture, a brief background may assist the Court with its analysis of the jurisdictional and venue issues now pending.  Mayer Brown is a law firm organized as an Illinois limited liability partnership with offices in California, Illinois, New York, North Carolina, Texas, and the District of Columbia.  *See*

---

[1] Defendants, Bank One Corporation and Banc One Investment Advisors Corporation, merged into and were succeeded by Chase effective July 1, 2004.

[2] Hereinafter, the "USDC for the SDNY."

Declaration of Mark McLaughlin ("McLaughlin Decl."), Exh. "A" to the Motion to Dismiss, at ¶¶ 6-7.  Mr. Durkin is a partner of Mayer Brown, LLP and has worked in its Chicago, Illinois office since 1993.  Mr. Durkin has lived in Chicago, Illinois or one of its suburbs for his entire life.  Declaration of Thomas M. Durkin ("Durkin Decl."), Exh. "B" to the Motion to Dismiss, at ¶¶ 3-4.

Mayer Brown and Mr. Durkin represented Chase from 2004 to the present in connection with a criminal investigation by the Internal Revenue Service and the Department of Justice (collectively, the "Government") regarding the sale of certain tax strategies which were alleged to be illegal tax shelters (the "Criminal Investigation").  Durkin Decl., Exh. "B," ¶ 8.  Mr. Ohle, then an employee of Chase, was one of the many targets of that investigation, which involved a number of entities and individuals besides Chase.  *Id*.  Mayer Brown and Mr. Durkin represented Chase after the alleged wrongful and/or criminal acts had been committed by Mr. Ohle and the other targets of the investigation.  *Id.* at ¶ 9.  Mayer Brown and Mr. Durkin did not have any involvement in the sales, actions or other matters that were the subject of the Criminal Investigation.  *Id.*

In connection with their representation of Chase during the Criminal Investigation, Mayer Brown and Mr. Durkin, on behalf of Chase, responded to requests for information from the Government, interviewed witnesses with relevant information, represented witnesses the Government wanted to question, and otherwise cooperated with the Government's investigation. Durkin Decl., Exh. "B," ¶ 10.  Mayer Brown and Mr. Durkin performed the vast majority of their work with respect to the Criminal Investigation in Chicago, Illinois or in New York City, New

York.[3]  *Id.*  This work preceded and did not relate to the submission of a supposedly false victim impact statement, which is the subject of the Complaint in this matter.  *Id*.

Following the Criminal Investigation, a Grand Jury returned an indictment against Mr. Ohle for alleged criminal acts arising out of or related to the sales of certain tax strategies.  Count One of the Third Superseding Indictment (the "Indictment") in the Criminal Case alleged that Mr. Ohle and others defrauded Chase (then Bank One) and other victims of millions of dollars, and then cheated on their own taxes by failing to report and pay taxes on those ill-gotten gains.  *See* Indictment, CC Doc. 66, Exh. "C" to the Motion to Dismiss.  The Indictment included a forfeiture allegation providing notice that, as a result of the offenses charged in the Indictment, Mr. Ohle would be required, upon conviction, to forfeit any property that constituted or was derived from proceeds traceable to the commission of the fraud offenses.  *Id.* at ¶¶ 46-47.  The forfeiture allegation expressly listed the properties the Government claimed was subject to forfeiture, and includes the same properties that are the subject of the Complaint in this matter.  *Id.*

On June 2, 2010, after a three-week trial, the jury returned a guilty verdict against Mr. Ohle on all counts of the indictment, including the charge that Mr. Ohle had defrauded Chase.  *See* CC Minute entry dated May 10, 2010 (entered June 3, 2010) and CC Doc. 139.  Thereafter, Mr. Ohle moved for a new trial, arguing that the government failed to prove that Mr. Ohle schemed to defraud Chase out of referral fees.[4]  *See* CC Docs. 117-118.  The USDC for the

---

[3]  Although Mr. Durkin made two trips to Louisiana in connection with the Criminal Investigation, those trips had nothing to do with his later submission of the victim impact statement that is the subject of Plaintiffs' claims in this case.  Durkin Decl., Exh. "B," ¶ 11.

[4]  This is the same exact argument that Mrs. Ohle and the other plaintiffs now make in the Complaint in this case.  *See* Complaint, Doc. 1, ¶¶ 33-41.

SDNY considered and rejected Mr. Ohle's arguments and denied his motion for new trial on September 24, 2010. *See* CC Doc. 139.[5]

After Mr. Ohle's conviction, the Assistant United States Attorney requested that Chase provide a victim impact statement in accordance with the jury's verdict. Durkin Decl., Exh. "B," ¶ 14. Mayer Brown attorneys working under Mr. Durkin's direction and supervision in Illinois drafted a victim impact statement on behalf of Chase, and Mr. Durkin submitted it to Judge Rakoff in the USDC for the SDNY on January 10, 2011. *Id.* This work had no relationship to the State of Louisiana. *Id.* The Plaintiffs in this case now claim, in direct contravention of the jury verdict in the Criminal Case, that the victim impact statement was false. *Id.*

On January 10, 2011, the very same date Chase submitted its victim impact statement, the USDC for the SDNY entered a Second Preliminary Order of Forfeiture and Restraint of Substitute Assets, which imposed a money judgment in the amount of $2,699,334 against Mr. Ohle. The Second Preliminary Order ordered the forfeiture to the United States of the properties described therein, which included the very same properties that are the subject of the Complaint in this matter. *See* 2nd Prelim. Order, CC Doc. 168, Exh. "D" to the Motion. Mrs. Ohle and other plaintiffs in this case filed petitions for ancillary proceeding, asserting ownership interests in the assets that had been seized. *See* CC Docs. 185-189. Mrs. Ohle and other plaintiffs in this case ultimately settled with the United States by entering into a Stipulation and Order governing the seizure and disposition of those assets.[6] *See* Stipulation and Order, CC Doc. 197, Exh. "E."

---

[5] Mr. Ohle later presented the same arguments to the United States Court of Appeals for the Second Circuit. The Second Circuit likewise rejected those arguments, affirming Mr. Ohle's conviction in all respects on March 6, 2012. *See* CC Doc. 222 (2nd Circuit Mandate).

[6] Plaintiff DV Acquisitions, LLC did not file a petition for ancillary proceeding and was not a signatory to the Stipulation and Order.

Significantly, in the Stipulation and Order, Mrs. Ohle and other plaintiffs in this case expressly agreed as follows:

- to forfeit to the United States all of the assets described in the Stipulation and Order, including the same properties that are the subject of the Complaint in this matter (*see* Stipulation and Order, CC Doc. 197, Exh. "E," at ¶ 1);

- to not file "any action or motion seeking to collaterally attack the seizure, restraint, or forfeiture of the Forfeited Assets" and to "waive all rights to appeal or to otherwise challenge or contest the validity of this Stipulation and Order of Settlement" (*see* Stipulation and Order, CC Doc. 197, Exh. "E," at ¶ 14); and

- that the United States District Court for the Southern District of New York "shall have exclusive jurisdiction over the interpretation and enforcement of this Stipulation and Order." (*See* Stipulation and Order, CC Doc. 197, Exh. "E," at ¶ 21).

Mrs. Ohle and the other plaintiffs were represented by counsel with respect to the Stipulation and Order. *See* Stipulation and Order, CC Doc. 197, Exh. "E," at pp. 4, 12. Nevertheless, Mrs. Ohle and the other plaintiffs now complain in this case that the very same assets which they agreed to forfeit in the Criminal Case were wrongfully seized as a result of the Defendants' alleged improper restitution claim.

Plaintiffs' claims in this case are an improper collateral attack on the jury verdict in the Criminal Case and the Stipulation and Order governing the seizure and disposition of their assets – an agreement Plaintiffs expressly agreed they would *not* collaterally attack. Putting aside (for now) the implausibility of Plaintiffs' contentions, the activity giving rise to Plaintiffs' claims – the supposed false impact statement – occurred in Illinois and was directed to New York. The activity giving rise to Plaintiffs' claims did not occur in and was not directed toward Louisiana. The only tangential connection Louisiana has to this case is that some of the assets forfeited by Mr. Ohle, Mrs. Ohle, and the other plaintiffs in this case happened to be located in Louisiana. *See* Complaint, Doc. 1, ¶ 20. Such contacts are insufficient to support personal jurisdiction over

-6-

1140707_1

Mayer Brown or Mr. Durkin, or to make this district a proper venue. Accordingly, Plaintiffs' claims should be dismissed.

### III.   LEGAL ARGUMENT

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Plaintiffs cannot meet this burden because, as set forth below, Plaintiffs' claims arise out of Mayer Brown and Mr. Durkin's activities in Illinois and/or New York.

#### A.   The Exercise of Personal Jurisdiction Must Satisfy Due Process

For this Court to exercise *in personam* jurisdiction over Mayer Brown and Mr. Durkin, Plaintiffs must establish that the exercise of jurisdiction comports with due process. *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945). To satisfy due process requirements, a plaintiff must establish: (1) that the nonresident defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) that the exercise of jurisdiction over the defendant comports with "traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 316, 66 S. Ct. at 158; *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). When, as here, the nonresident defendant lacks sufficient minimum contacts with the forum state, the court need not reach the fairness prong of the due process analysis. *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997).

Minimum contacts may give rise to specific or general personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984). To exercise specific jurisdiction over a nonresident defendant, the claim asserted against the defendant must arise out of or directly relate to his contacts with the forum state.

*Helicopteros*, 466 U.S. at 414 n.8, 104 S. Ct. at 1872 n.8. General jurisdiction requires "substantial, continuous, and systematic" contacts by the nonresident defendant in the forum state. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000) (citing *Helicopteros*, 466 U.S. at 416, 104 S. Ct. at 1873)). Neither general nor specific jurisdiction exists in this case.

### 1.  Mayer Brown and Mr. Durkin Lack Minimum Contacts With Louisiana Sufficient to Support General Jurisdiction

Because Mayer Brown and Mr. Durkin's contacts with Louisiana are not "substantial, continuous and systematic," Plaintiffs cannot establish general *in personam* jurisdiction over them. In *Helicopteros*, the Supreme Court set forth how difficult it is to establish general jurisdiction. There, the defendant had extensive contacts with Texas over a six-year period, including purchasing helicopters comprising 80% of its fleet at a cost of more than $4 million, sending its prospective pilots to Texas for training, sending management to Texas for consultations, and receiving a check for $5 million drawn on a Texas bank. *Helicopteros*, 466 U.S. at 411, 104 S. Ct. at 1870. Nevertheless, the Supreme Court concluded that none of these contacts, considered together or in isolation, was substantial enough to warrant the court's exercise of personal jurisdiction over the non-resident defendant. *Id*. at 416-19, 104 S. Ct. at 1872-1874. According to the Supreme Court, the contacts examined to determine general jurisdiction include whether the non-resident maintained an office and bank accounts, kept company files, held directors' meetings, or engaged an agent in the forum state. *Id*. at 415-16, 104 S. Ct. at 1872-73.[7]

---

[7]  *See also Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 328 (5th Cir. 1996) (owning real estate in forum, conducting great deal of business in forum, and traveling frequently to forum) (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir. 1987)); *Wilson v. Belin*, 20 F.3d 644, 651 (5th Cir. 1994) (making all or substantial part of business decisions, maintaining bank accounts and company files, and holding directors' meetings in forum).

More recently, in *Johnston v. Multidata Systems International Corp.,* 523 F.3d 602 (5th Cir. 2008), the Fifth Circuit ruled that the district court lacked personal jurisdiction over companies with far more substantial connection with the forum state than Mayer Brown or Mr. Durkin has with Louisiana.  In *Johnston*, one of the defendants sold millions of dollars worth of products annually to Texas customers, representing anywhere from .5% to 2.5% of the company's total global sales.  The Fifth Circuit concluded that "these various activities [did not] amount to substantial, systematic, and continuous contacts."  *Id*. at 614.  The court emphasized that the company was not registered to do business in the forum state, did not own, possess or use property in the forum state, did not maintain a mailing address or bank account in the forum state, and did not keep, maintain, or store any documents within the forum state.  *Id*.  The court also found it unpersuasive that the company maintained certain licenses within the forum state.  *Id*.

As in *Helicopteros* and *Johnston,* Mayer Brown and Mr. Durkin do not have "substantial, continuous, and systematic" contacts with the forum.  Mayer Brown does not maintain offices, operations, accounts or other property in Louisiana.  McLaughlin Decl., Exh. "A," at ¶¶ 6, 8.  It is not and never has been qualified to do business in Louisiana, has no agent for service of process in Louisiana, and does not advertise or otherwise solicit business in Louisiana.  *Id.* at ¶¶ 6, 8-9.  Although the firm advertises through its website, print mailings, and e-mail communications, these efforts are not targeted to persons or entities in Louisiana.[8]  *Id*. at ¶ 9.

The firm does not actively recruit employees from Louisiana.  McLaughlin Decl., Exh. "A," ¶ 8.  The firm has more than 1,600 employees in the United States, and only one, a student intern, lists her residence as Louisiana, although she works in the firm's New York office.  *Id.*

---

[8]  Of course, personal jurisdiction cannot be based on a passive website.  *See, Revel v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002).

Of Mayer Brown's approximately 856 lawyers in the United States, none currently resides in or lists Louisiana as a residence for tax purposes. *Id.* at ¶¶ 7, 10. Only one of its attorneys is licensed in Louisiana, and that attorney has not had an active membership to the Louisiana bar since June 2001. *Id.* Although the firm occasionally represents clients in Louisiana courts on a *pro hac vice* basis, and occasionally assists clients with business matters in Louisiana, Mayer Brown generates less than one-tenth of one percent of its total United States fee revenue from cases in Louisiana or clients residing in Louisiana. *Id.* at ¶¶ 11-12. That Mayer Brown generates less than one-tenth of one percent of its total United States fee revenue from clients in Louisiana is a testament to the irregular and insubstantial nature of the firm's contacts with the forum state. Such irregular and insubstantial contacts cannot support the exercise of personal jurisdiction. *See We're Talkin' Mardi Gras, LLC v. Davis*, 192 F. Supp. 2d 635, 641 (E.D. La. 2002) (fact that defendant law firm did not derive any significant revenue from Louisiana was an important factor in determination that contacts with Louisiana were not systematic and continuous). Thus, the Court lacks general personal jurisdiction over Mayer Brown.

For similar reasons, the Court lacks general jurisdiction over Mr. Durkin. Mr. Durkin has lived and worked in Illinois for his entire life. Durkin Decl., Exh. "B," ¶ 4. He does not own property in Louisiana. *Id.* at ¶ 5. Mr. Durkin is not licensed to practice law and does not practice law in Louisiana. *Id.* at ¶ 6. During his thirty-four years of practice as an attorney, he has been required to travel to Louisiana on six occasions during the course of representing various clients, as detailed in his Declaration attached hereto. *Id.* at ¶ 11. Mr. Durkin has also enrolled as counsel *pro hac vice* in two Louisiana matters on behalf of Chase, neither of which required him to travel to Louisiana. *Id.* at ¶ 12. Mr. Durkin has only traveled to Louisiana on one other occasion during his life, for a continuing legal education seminar in approximately March 1993.

*Id*. at ¶ 13.  Not one of those matters had anything to do with the alleged "improper restitution claim," which is the subject of the Complaint in this case.  *Id.* at ¶¶ 11, 12.  Such irregular and insubstantial contacts cannot support the exercise of general *in personam* jurisdiction over Mr. Durkin.  *See Star Technology, Inc. v. Tultex Corp.*, 844 F. Supp. 295, 298 (N.D. Tex. 1993).

> **2.  Plaintiffs' Claims Do Not Arise Out of Mayer Brown and Mr. Durkin's Contacts With Louisiana, and Therefore This Court Lacks Specific Jurisdiction**

Plaintiffs' only allegation that specific jurisdiction exists in this case is one conclusory allegation that the Court may discredit.  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 1985) (there is no requirement that a court give credit to conclusory allegations of jurisdictional contacts).  *See* Complaint, Doc. 1, ¶ 23 ("Defendants … were found in and/or transacted business in the State of Louisiana, and the cause of action which is the object of this Complaint arises out of business transactions in the state of Louisiana, including specific acts in this District.").  As detailed above, Plaintiffs' claims arise out of an alleged improper restitution claim in the Criminal Case in New York.  The activities in furtherance of the alleged improper restitution claim occurred in Illinois, where Mayer Brown and Mr. Durkin practice, and would have been directed to New York, where the Criminal Case was pending.  *See* Durkin Decl., Exh. "B," ¶ 14.  There is simply no connection to Louisiana here that could support the exercise of specific *in personam* jurisdiction.  *See, e.g., Star Technology*, 844 F. Supp. at 299 (district court lacked jurisdiction over attorney who performed majority of legal work outside the forum); *Henry v. Gallop, Johnson & Neuman LC*, 2004 WL 2095608 (E.D. La. 2004); *First Trust National Assoc. v. Jones Walker Waechter, Poitevent, Carrere & Denegre*, 996 F. Supp. 585, 590 (S.D. Miss. 1998).

Plaintiffs may claim that personal jurisdiction exists because the alleged activities had the "effect" of causing some of Plaintiffs' Louisiana assets to be forfeited or seized.  *See* Complaint,

-11-

Doc. 1, ¶ 20. Fifth Circuit authorities are directly to the contrary. In *Panda Brandywine*, the Fifth Circuit held that allegations that a defendant knew its actions would cause injury in the forum were "insufficient to establish a prima facie case for [personal] jurisdiction." *Panda Brandywine*, 253 F.3d at 869. Causing tortious effects in the forum "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Id.* (quoting *Allred* 117 F.3d at 286). And, the "foreseeability of causing injury" in the forum "is not a 'sufficient benchmark' for specific jurisdiction." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174 (1985)). Thus, without a specific act directed towards the forum, mere supposed injury in the forum is insufficient to confer specific jurisdiction.

*First Trust National Assoc. v. Jones Walker Waechter, Poitevent, Carrere & Denegre*, 996 F. Supp. 585, 590 (S.D. Miss. 1998), is also on point. In that case, the plaintiff asserted that personal jurisdiction over the non-resident law firm existed in Mississippi because the law firm's alleged wrongful activities caused the plaintiff's collateral, located in Mississippi, to be impaired. The district court disagreed and found:

> In determining where the injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences, such as pain and suffering, economic effects or other collateral consequences that often stem from the actual injury. Recognizing that such collateral consequences may be far-reaching (particularly in a commercial tort situation such as the one before us), our precedent holds that consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur.

*First Trust*, 996 F. Supp. at 588 (quoting *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir. 1996)). In *First Trust,* the district court expressly rejected the plaintiff's contention that personal jurisdiction existed because the plaintiff felt the "effects" of the defendants' actions in the forum. *Id.* at 590. For the same reasons, Plaintiffs in this case cannot claim that personal jurisdiction

exists merely because they lost certain assets in Louisiana as a result of the supposed false victim impact statement in the New York Criminal Case.

Nor can Plaintiffs rely on their state law conspiracy and fraud claims to assert specific *in personam* jurisdiction over Mayer Brown and Mr. Durkin.  Even if Plaintiffs' conclusory allegations of conspiracy and fraud were legally sufficient (which they are not), the law is clear that personal jurisdiction over one defendant conspirator is not sufficient to grant personal jurisdiction over a non-resident co-conspirator.  *Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 608-609 (E.D. Tex. 1994).  Instead, there must be minimum contacts by each alleged co-conspirator with the forum state.  *Id.* at 609.  Here, the acts constituting the alleged conspiracy and fraudulent scheme would have taken place, if anywhere, in Illinois and New York.  Since none of the alleged acts occurred in Louisiana, there can be no specific personal jurisdiction.  *See also Thomas v. Kadish,* 748 F.2d 276 (5th Cir. 1984); *Deininger v. Deininger,* 677 F. Supp. 486, 493 (N.D. Tex. 1988) (no specific personal jurisdiction where plaintiff failed to establish a *prima facie* showing of a relationship between the defendants, the forum, and her causes of action for conspiracy and fraud); *Star Technology,* 844 F. Supp. at 299 (conspiracy allegation alone will not support personal jurisdiction absent minimum contacts).

Mayer Brown and Mr. Durkin's specific contacts were with states *other than* Louisiana.  For all of the foregoing reasons, the Court lacks specific jurisdiction over Mayer Brown and Mr. Durkin.

### B. RICO Does Not Confer Personal Jurisdiction Over Mayer Brown and Mr. Durkin

Nor can plaintiffs rely upon the nationwide service of process provision of the RICO statute to establish personal jurisdiction over Mayer Brown and Mr. Durkin.  RICO's Venue and Process Section provides, in pertinent part:

>    (a)   Any civil action or proceeding under this chapter against any person *may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs*.
>
>    (b)   In any action under [civil RICO] in any district court of the United States *in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court,* the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C.A. § 1965(a) and (b) (emphasis supplied).

The RICO statute "places limitations on nationwide service of process that do not exist in other nationwide service of process statutes." *David v. Signal Int'l, LLC*, 588 F. Supp. 2d 718, 721 (E.D. La. 2008) (citing *Hawkins*, 890 F. Supp. at 606). "Most notably, the plaintiff must establish personal jurisdiction over at least one defendant under § 1965(a) before other nonresident defendants become subject to nationwide service of process" under § 1965(b). *Id.* at 721 (citing *Hawkins,* 890 F. Supp. at 606; *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65 (2d Cir. 1998)). The mere fact that one RICO defendant is subject to personal jurisdiction is not enough to hale all other alleged RICO defendants into the forum. Instead, RICO defendants not subject to personal jurisdiction under 1965(a) can be haled into the forum under 1965(b) only if "the ends of justice require" it, meaning "**there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators**." *Hamilton v. Business Partners, Inc.*, 1997 U.S. Dist. LEXIS 16410, *9 (E.D. La. Oct. 15, 1997) (emphasis added) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)); *Hawkins*, 890 F. Supp. at 605 (same).

In this case, neither Mayer Brown nor Mr. Durkin is subject to the Court's personal jurisdiction under section 1965(a) because neither resides, is found, has an agent, or transacts

affairs[9] in the State of Louisiana. *See* Sections II.A.1 and II.A.2, *infra.* Even if plaintiffs could establish personal jurisdiction over Chase, they cannot establish it over Mayer Brown or Mr. Durkin. Consequently, Mayer Brown and Mr. Durkin may be haled into this forum only if Plaintiffs could establish "the ends of justice require" it, *i.e.,* "there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." Plaintiffs can make no such showing here because there are **two** other forums where personal jurisdiction is appropriate as to all defendants.

The USDC for the SDNY would have personal jurisdiction over all defendants. Plaintiffs' claims in this case are premised on a supposed improper restitution claim on behalf of Chase in the Criminal Case in New York. *See* Complaint, Doc. 1, ¶ 17. The allegedly false victim impact statement prepared by Mayer Brown and Mr. Durkin was sent to New York, and was directed to the Criminal Case in New York. If any impropriety occurred with respect to the victim impact statement, the USDC for the SDNY would have specific *in personam* jurisdiction over all of the participants.

In addition, it is beyond dispute that all of the defendants in this action are subject to either specific or general *in personam* jurisdiction in Illinois. Plaintiffs' own Complaint acknowledges this point. *See* Complaint, Doc. 1, ¶¶ 10-13 (defendants Rogoff, Kramer, Mayer Brown and Durkin all reside or conduct business in Cook County, Illinois). Moreover, the Chase Defendants all have a general business presence in Illinois.

Thus, this case is in stark contrast to those decisions where the district court concluded the "ends of justice" did require other RICO defendants be haled into the forum. *See, e.g.,*

---

[9] The language "transacts his affairs" in Section 1965(a) requires a traditional minimum contacts analysis. *See Bonvillain v. La. Land & Exploration Co.*, 702 F. Supp. 2d 667, 683 (E.D. La. 2010).

*David,* 588 F. Supp. 2d at 724 (alleged scheme "took place in multiple countries and in multiple states," such that "[n]either justice nor judicial economy would be served by forcing the plaintiffs to fracture their claims across multiple forums to reach the various defendants"); *Hamilton*, 1997 U.S. Dist. LEXIS 16410 at *10 (almost all of the defendants resided "in different states, *i.e.*, Louisiana, Arizona, Florida, Georgia and New Mexico.").

Because there are other forums in which all RICO defendants are subject to personal jurisdiction, this Court may not exercise personal jurisdiction over Mayer Brown and Mr. Durkin pursuant to section 1965(b). Plaintiffs' claims against them should be dismissed.

## IV.   Alternatively, the Court Should Dismiss for Improper Venue

28 U.S.C. § 1391(b) provides that venue is proper *only* in districts: (1) where any defendant resides if all defendants are residents of the same state; (2) where a substantial part of the events or omissions giving rise to the claim occurred; or (3) where, *if there is no other district in which the case can be brought*, the defendant is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(b) (emphasis added). None of the 1391(b) factors is satisfied here.

First, venue here is improper under Section 1391(b)(1) because all defendants are not residents of Louisiana. It is beyond dispute that all of the individual defendants, Rogoff, Kramer, and Durkin, are residents of Illinois.[10] *See* Complaint, Doc. 1, ¶¶ 10-11, 13 (Rogoff, Kramer, and Durkin are individuals "residing in Cook County, Illinois."). Mayer Brown is not a

---

[10]   28 U.S.C. § 1391(a) provides that a natural person is "deemed to reside in the judicial district in which that person is domiciled."

-16-

resident of Louisiana because it is not subject to personal jurisdiction here.[11] *See* Complaint, Doc. 1, ¶¶ 9, 12. Thus, the requirements of 1391(b)(1) are not satisfied.

Second, venue is improper under Section 1391(b)(2) because a substantial portion of the events giving rise to Plaintiffs' alleged claims occurred in either Illinois or New York; none occurred in Louisiana. Complaint, Doc. 1, ¶¶ 12-13 (Mayer Brown and Mr. Durkin reside in Illinois); 45 (victim impact statement sent to New York); Durkin Decl., Exh. "B," ¶ 14.

Finally, venue is improper under Section 1391(b)(3) because this action could have been brought in Illinois under 1391(b)(1) because *all* defendants are residents of Illinois,[12] or in New York under 1391(b)(2) because a substantial portion of the events giving rise to Plaintiffs' alleged claims occurred in New York. For the same reasons, Plaintiffs cannot rely on the RICO venue provision in 18 U.S.C. § 1965(b) because this action could have been brought against all defendants in a different judicial district.

28 U.S.C. § 1406(a) provides as follows:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Because this district is obviously improper, the Court should dismiss this case rather than transfer it. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201-02 (4th Cir. 1993) (dismissal warranted where plaintiff makes "obvious error" in selecting improper forum; dismissal is

---

[11] 28 U.S.C. § 1391(c) provides that an entity with the capacity to sue and be sued is deemed to reside in any judicial district in which the entity is subject to the court's personal jurisdiction.

[12] As noted above, all of the individual defendants, Rogoff, Kramer, and Durkin, are residents of Illinois because they are domiciled there. 28 U.S.C. § 1391(c)(1). Chase and Mayer Brown are residents of Illinois because they are subject to personal jurisdiction there. 28 U.S.C. § 1391(c)(2).

appropriate when plaintiff could have reasonably foreseen that forum was improper); *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992) (dismissing case rather than transferring where plaintiff's selection of the improper venue "smack[ed] of harassment, bad faith" and forum shopping).[13] Although the interests of justice generally require transfer instead of dismissal, *see Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962), dismissal is appropriate

> if the plaintiff brought the action in the wrong district (1) for some improper purpose, *e.g.*, the action was brought in the wrong district in bad faith in an attempt to circumvent an adverse ruling in a related action pending elsewhere, (2) to harass the defendant with litigation in a remote forum, or (3) if "blatant forum shopping" led the plaintiff not to bring the action in the proper district in the first instance.

*Id*.

Here, Plaintiffs brought this action in Louisiana, a district having no connection to the alleged wrongful conduct – *i.e.*, the supposedly false victim impact statement – solely to circumvent the Stipulation and Order to which they agreed in the Criminal Case in New York. As discussed above, the Stipulation and Order governed the disposition of the assets the Plaintiffs now erroneously claim were seized because of the Defendants' supposed wrongful conduct. In that agreement, the Plaintiffs expressly agreed they would not collaterally attack the Stipulation and Order and they agreed that the USDC for the SDNY had exclusive jurisdiction to interpret and enforce the agreement. Unable to convince the USDC for the SDNY or the Second Circuit Court of Appeals that Chase was not damaged by Mr. Ohle's criminal conduct and that Mr. Ohle was therefore wrongfully convicted, they now ask this Court to make such a finding.

---

[13] *See also* 17 *Moore's Federal Practice 3d*, § 113.34[3] (Matthew Bender 3d Ed. 2008).

Such conduct is blatant forum shopping, and should not be countenanced by this Court. Dismissal is warranted.

Alternatively, if the Court is not inclined to dismiss Plaintiffs' case without prejudice, the Court should transfer this case to the USDC for the SDNY, given that the Defendants submitted the alleged improper restitution claim to New York and given that the USDC for the SDNY retained exclusive jurisdiction to interpret the Stipulation and Order.

## V. CONCLUSION

For all of these reasons, Plaintiffs' claims against Mayer Brown and Mr. Durkin should be dismissed.

                                    Respectfully submitted,

                                      /s/ James A. Brown
James A. Brown, T.A. (Bar #14101)
Carey L. Menasco (Bar #28131)
LISKOW & LEWIS, PLC
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Tel:  (504) 581-7979
Fax:  (504) 556-4108
JABrown@Liskow.com
CLMenasco@Liskow.com

*Counsel for Mayer Brown LLP and Thomas M. Durkin*

-20-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed a copy of the above and foregoing pleading on July 10, 2012 using the court's CM/ECF system, which will cause a notice of electronic filing to be served on all registered users. I further certify that I served a copy of the above and foregoing pleading on the following counsel of record by electronic mail on July 10, 2012:

| | |
|---|---|
| Dennis Edward Rinck, Jr.<br>**Rivertown Law Center, LLC**<br>525 Clay St.<br>Kenner, LA 70062<br>(504) 704-1194<br>Email: dennisr@rivertownlaw.com<br>*Counsel for Plaintiffs* | John William Hite III<br>Glen Mercer<br>**Salley, Hite, Mercer & Resor LLC**<br>One Canal Place<br>365 Canal St.<br>Suite 1710<br>New Orleans, LA 70130<br>504-566-8800<br>Email: jhite@shrmlaw.com<br>Email: gmercer@shrmlaw.com<br>*Counsel for Banc One Investment Advisors Corporation, Richard A Rogoff, and JP Morgan Chase & Co.* |

                                                            /s/ James A. Brown